**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **LACARLTON DEWAYNE MITCHELL** | § | |
| **Petitioner** | § | |
| | § | |
| **V** | § | **CIVIL ACTION NO: 7:11-CV-029–O-KA** |
| | § | |
| **DIRECTOR TDCJ-CID** | § | |
| **Respondent** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**

Under the authority of 28 U.S.C. § 636(b) and Rules 8(b) and 10 of the Rules Governing Section 2254 Proceedings for the United States District Courts, on December 10, 2013, this case was referred to the undersigned United States Magistrate Judge by Order of Reference (Docket No.18) for hearing, if necessary, and proposed findings of fact and recommendation for disposition. Petitioner Uranga seeks habeas corpus relief in this Court pursuant to 28 U.S.C. §2254. I recommend that the District Court deny Petitioner's Petition for Writ of Habeas Corpus for the following reasons:

Custody Status

The Petitioner, Lacarlton Dewayne Mitchell, is currently in the custody of the Texas Department of Corrections serving a sentence of ninety-nine (99) years pursuant to a 2007 judgment and sentence out of the 89th District Court of Wichita County, Texas.[1]  Mitchell was charged with murder as a repeat offender. Mitchell entered a plea of not guilty but, on May 23, 2007, a jury found him guilty of murder and assessed the punishment at ninety-nine years imprisonment with a

---

[1]     The state court records submitted herein by the state of Texas on September 6, 2011, contain the following materials which shall herein be referenced as follows: "CR" refers to the state court clerk's record of the trial papers; "RR" refers to the state court reporter's transcript of trial court proceedings (hard copy) as opposed to the (digital copy) that is arranged and paged differently; "DAR" refers to the record on the direct appeal; and "SHCR" refers to the state court clerk's record of the state habeas corpus proceeding records.

1

$10,000.00 fine.

Post-trial Procedural Status

On direct appeal Mitchell's conviction was affirmed by the Sixth Court of Appeals of Texas in late 2008 with written opinion.[2] Thereafter, the Texas Court of Criminal Appeals refused Mitchell's petition for discretionary review.[3]  On July 14, 2010, Mitchell filed an application for state writ of habeas corpus challenging this conviction.[4] The Texas Court of Criminal Appeals remanded the application to the trial court for evidentiary hearing.  The trial court entered written findings recommending denial of the application.[5] On March 2, 2011, the Texas Court of Criminal Appeals denied relief based on the trial court's findings.[6]  Thereafter, Mitchell filed his  federal habeas corpus application herein on or about February 16, 2011.[7]

Petitioner's Alleged Claims for Relief

By his petition Mitchell asserts that he received inadequate assistance of counsel in seven respects: (1) Counsel's failure to investigate the racial composition of the jury pool which was challengeable on "Fair-Cross-Section" grounds; (2) Counsel's failure to demand of the prosecutor a race neutral reason for the under-representation of African Americans in the pool; (3)  Counsel's failure to object to the jury instructions with respect to the phrasing of the "lesser-included-offense" instruction because it used the phrase "as included in the indictment;" (4) Counsel's failure to object that the verdict made a guilt finding on only one count when the defendant was arraigned on two

---

[2]    *Mitchell v. State, No.2-07-196-CR, slip op. (*Tex. App. Fort Worth, 2008).

[3]    *Mitchell v. State*, PSR No. 1617-08 (Tex. Crim. App. 2008).

[4]    SHCR-01, p.2.

[5]     SHCR-01, pp.884-94.

[6]    SHCR-01 cover.

[7]    Docket No 2.

2

counts; (5) Counsel's failure to challenge (for cause or peremptory) juror Number 2, Elizabeth Batista, for her inability to pay attention during the trial; (6) Counsel's failure to object to the prosecutor's closing argument about the absence of testimony by certain witnesses (including an alibi witness or the defendant himself); and, (7) Counsel's failure to object to the prosecutor's sentencing phase closing argument referring to gang violence.

<u>State's Responses to the Claims</u>

The State acknowledges that with respect to Mitchell's claims as paraphrased above Mitchell has exhausted his state remedies and that pursuit of such claims in this Court are not barred as being successive[8] or by limitations.[9]  The State answers that all of Mitchell's claims have been litigated and determined by state court proceedings below and that the findings of those state courts are entitled to the presumption of correctness, but even if fairminded jurists might disagree otherwise, those state court decisions are not objectively unreasonable. With respect to each claim the state asserts as follows:(1) *Jury Pool Issue*: Mitchell has wholly failed to educe any evidence whatsoever to support his wholly conclusory allegation that African-Americans are Constitutionally under-represented on the jury pools in Wichita County, Texas; (2) *Batson* Issue: There is no *Batson*-nature requirement for a prosecutor to explain the racial makeup of a jury venire; (3) *Lesser-Included Offense-Instruction*: Since proof of the greater charged offense subsumes proof of the lesser offense, counsel was not required to make a frivolous objection; (4) *Verdict Form Issue*: The state habeas corpus court determined that a single charge of murder in two paragraphs in the charge was not a charge of two separate counts of murder. This decision was not unreasonable nor was prejudice shown; (5) *Failure to Strike Juror Issue*: The state court made a credibility finding regarding counsel's affidavit testimony about his use of the peremptory strikes. It used that finding as a basis

_____

[8]        28 U.S.C. § 2244(b).

[9]        28 U.S.C. §2244(d).

for its factual findings in rejecting Mitchell's claim.  Its decision is binding and is not objectively

unreasonable; (6) *Closing Argument at Guilt Phase*: In the light that defendant claimed an alibi, the

prosecutor's comment that the defense had not produced an alibi witness was not a comment on the

failure of the defendant to testify. Rejection of the claim was not unreasonable and no prejudice was

shown; (7) *Closing Argument at Punishment Phase*: In the context of the case, the prosecutor's

comment was a proper plea for law enforcement. Trial court's rejection of this claim was not

unreasonable and no prejudice was shown.

<u>Habeas Corpus Standard of Review</u>

The AEDPA provides in relevant part that: (d) An application for a writ of habeas corpus on

behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

respect to any claim that was adjudicated on the merits in State court proceedings unless the

adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding.  Interpreting Congress'

express language in this section of AEDPA, many courts have adopted explanations of what these

two standards mean in the factual contexts of the cases under consideration by that court.

 Under the "contrary to" clause, a federal court may grant the writ of habeas corpus if the

state court either arrives at a conclusion opposite to that reached by the United States Supreme Court

on a question of law or decides a case differently from the United States Supreme Court on a set of

materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Chambers v.

Johnson* , 218 F.3d 360, 363 (5th Cir. 2000). Under the " unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court either unreasonably applies the correct

legal rule to the facts of a particular case or unreasonably extends a legal principle from Supreme

Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; see also, *Valdez v. Cockrell*, 274 F.3d 941 (5th Cir. 2001). A state court unreasonably applies clearly established federal law if it identifies the correct governing principal but unreasonably applies that principal to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). The question is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The standard for determining whether a state court's application was unreasonable is an objective one, and applies to all federal habeas corpus petitions which, like the instant case, were filed after April 24, 1996, provided that they were adjudicated on the merits in state court. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Furthermore, in reviewing the determinations by the state courts, the Supreme Court further instructed the federal courts to be sure the determinations were made "on the merits" giving "due deference" to the state court's findings. In the context of habeas corpus, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). Upon a finding of state court compliance with the "contrary to" clause of 28 U.S.C. § 2254(d)(1), federal courts give deference to the state court's findings unless such findings violate the "unreasonable application" clause of 28 U.S.C. § 2254(d)(2). *Chambers*, supra at 363. The "unreasonable application" clause concerns only questions of fact. *Hill v. Johnson* , 210 F.3d 481, 485 (5th Cir. 2000). The resolution of factual issues by the state court is afforded a presumption of correctness and will not be disturbed unless the habeas petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata* , 449 U.S. 539, 550 (1981). Absent such evidence, the presumption

5

of correctness is applied provided that the state court findings are evidenced in writing, issued *after a hearing* on the merits, and are *fairly supported by the record*. (Emphasis supplied.) 28 U.S.C. § 2254(d); e.g., *Burden v. Zant*, 498 U.S. 433, 436-37 (1991); *Williams v. Scott*, 35 F.3d 159, 161 (5th Cir. 1994). Furthermore, as discussed above, AEDPA put into place a deferential scheme, under which the federal court must defer to a state court adjudication on the merits. 28 U.S.C. § 2254(d). The term "adjudication on the merits," like its predecessor "resolution on the merits," refers solely to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons. *Neal v. Puckett* , 239 F.3d 683, 686-87 (5th Cir. 2001); *Mercadel v. Cain* , 179 F.3d 271, 274 (5th Cir. 1999). It does not speak to the quality of the process. *See Green v. Johnson*, supra at 1121 (rejecting pre-AEDPA contention that "the resolution on the merits prerequisite is a proxy for the quality of the legal process resolving a dispute"); *Murphy v. Johnson,* 205 F.3d 809, 813 (5th Cir. 2000) (applying *Green* to "adjudication on the merits").

<u>Effectiveness of Counsel Review Standard</u>

Because the present matter extensively involves allegations of ineffective assistance of counsel, the analysis centers on § 2254(d)(1). *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010) ("Claims of ineffective assistance of counsel involve mixed questions of law and fact and are governed by § 2254(d)(1)."). The Sixth Amendment of the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). When a convicted defendant seeks habeas corpus relief on the ground of ineffective assistance of counsel, he must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland*, 466 U.S. at 687-

6

91 & 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  It is not sufficient for a habeas petitioner to merely allege deficiencies on the part of counsel.  He must affirmatively plead the resulting prejudice in his habeas petition.  *Hill v. Lockhart*, 474 U.S. 52, 59-61 (1985); *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). "It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged ineffective by hindsight.  Rather, inquiry must be made into the totality of the circumstances surrounding counsel's performance to determine whether reasonably effective representation was provided." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982).  A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action might be considered sound trial strategy.  *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Bridge v. Lynaugh*, *supra*.

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's errors were so egregious as to deprive the defendant of a fair trial whose result is reliable. *Strickland*, 466 U.S. at 687.  The test to establish whether there was prejudice is whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the trial would have been different." *Id.* at 694.  A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.*  It is not enough for a habeas petitioner to merely allege deficiencies on the part of counsel.  He must affirmatively plead the resulting prejudice in his habeas petition.  *Hill v. Lockhart*, 474 U.S. 52, 59-61 (1985); *Bridge v. Lynaugh*, *supra*.

Discussion

Fair-Cross-Section Issues (1) and (2)

Analysis of these companion issues begins with the Supreme Court's decision in *Taylor v.*

7

*Louisiana*, 419 U.S. 522 (1974) holding that the Sixth Amendment right to jury trial applies to the States through the Fourteenth Amendment thereby requiring that "[t]he selection of a petit jury from a representative cross section of the community is an essential component for the Sixth Amendment right to a jury trial." Thereafter in *Duren v. Missouri*, 439 U.S. 357 (1979), the Supreme Court laid out the three criteria necessary to establish a *prima facia v*iolation of the fair-cross-section requirement, to-wit:

> "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to *systematic exclusion* of the group in the jury-selection process." *Id*. at 364.(Emphasis supplied)

Later, faced with a number of fair-cross-section challenges, the Supreme Court held that the mere differential between the percentage of members of a single class of minorities within an individual jury panel and the percentage of members of such minority class in the general public, is not sufficient evidence of "selective exclusion" of class members. *Berghuis v. State*, 559 U.S. 314, (2010)*(*mere proof of percentage disparities in representation is not sufficient to establish the "systematic exclusion" factor under *Duren*) and *May v. State*, 738 S.W.2d 261, 269 (Tex. Crim. App. 1987) (disproportionate representation in a single panel does not demonstrate the systematic exclusion of distinctive groups in violation of appellant's rights under the Sixth Amendment).

Invoking this Sixth Amendment right, Mitchell alleges "only one venire member out of 60 was African American despite African Americans representing more than 10 percent of Wichita County." Springing from this conclusory allegation, he asserts that his trial counsel "failed to exercise reasonable diligence in conducting a pretrial investigation based on fair-cross-section violation." He also faults his trial counsel because he "failed to request that the State be made to

provide a race-neutral reason for the gross underrepresentation of African Americans on the jury panel" thus composed.[10] This last assertion is somewhat of a backhanded *Batson* argument. These federal habeas allegations were substantially the same allegations he made in the state habeas corpus court below.[11] There, following a remand mandate from the Court of Criminal Appeals, the trial court directed Mitchell's trial counsel to reply to Mitchell's allegations in affidavit form.[12] Considering the affidavit testimony of Mitchell's counsel[13] and no other evidence[14] and without further hearing to develop the record, the trial court found that Mitchell had failed to meet his burden of proof necessary to establish requirements two and three under *Duren* and recommended denial of relief.[15] Mitchell filed a written objection to the trial court's findings and expressly requested an evidentiary hearing to "develop the record relevant to these claims,"[16] but the trial court overruled the objections.[17] Without further opinion, the Court of Criminal Appeals denied the relief based on the trial court's findings.[18]

The only factual support for Plaintiff's Sixth Amendment Claim before the state habeas trial

---

[10]   Docket No. 2, p.7.

[11]   SHCR pp.7-8.

[12]   SHCR (Event 2421333), Court of Criminal Appeals Order dated 9-29-10.

[13]   SHCR pp.861-66.

[14]   Apart from an affidavit from the prosecuting attorney on an issue unrelated to the composition of the jury venire.

[15]   SHCR pp.884-94.

[16]   *Id.* pp.902-908.

[17]   *Id*. p.909.

[18]   SHCR (Event 2423280), Court of Criminal Appeals Order dated 1-21-11.

court was the factual claim of a percentage differential between the number of African American jurors on the venire from which his jury was selected and the percentage of African Americans within the county. Plaintiff wholly failed to point to any factor, element, or part of the jury venire selection process used in Wichita County or in Texas as a whole that caused or resulted in a "selective exclusion" of African Americans from Wichita County juries. In fact the issue of the manner of selection of jury *venires* in counties in Texas has previously been challenged and litigated and found to be in compliance with the Sixth Amendment and *Duren*. In *Pondexter v. State, 942 S.W.2d 577, 580-01 (Tex. Crim. App. 1996) cert. denied, 522 U.S. 825, 139 L. Ed. 2d 42, 118 S. Ct. 85 (1997)*, addressing a Red River County jury, the Court held:

> " In the instant case, appellant did meet the first prong of *Duren*, because the group allegedly excluded is distinctive; African-Americans. However, for the following reasons, appellant fails to carry his burden in meeting prong two, a showing of unfairness and unreasonableness, and prong three, a showing of systematic exclusion. The record shows that venire members were chosen randomly, by computer through voter registration, driver's license and identification card registration lists. There was no evidence introduced by appellant that showed that the difference between the percentage of African-Americans in the county and the percentage on the jury panel was in fact not fair and reasonable. While on its face, ten percent of the array versus twenty-two percent county-wide raises an inference of unfairness or unreasonableness, appellant failed to show that the number of African-Americans who qualified for the selection process (registered voters, and those with driver's licenses or identification cards) were of the same or similar percentages as the population of the county....Appellant also failed to show "systematic exclusion." Appellant brought forth information relating only to the venire in this case. In *May v. State, 738 S.W.2d 261, 269 (Tex.Crim. App. 1987)*, we stated that disproportionate representation in a single panel does not demonstrate the systematic exclusion of distinctive groups in violation of appellant's rights under the Sixth Amendment." Additionally, as previously stated, the venire members were chosen through voter registration, driver's license and identification card registration by computer. Appellant simply offered no evidence that the selection process operated in any way to systematically exclude African-Americans from the panel."

Similarly, in *Lacy v. State*, 899 S.W.2d 284 the Texas Twelfth Court of Appeals addressed the issue with regard to a Smith County jury. Citing *Holland v. Illinois*, 493 U.S. 474, 480 (1990)

the court opined:

> "The Sixth Amendment requirement of a fair cross-section of the community on a venire panel is a means of assuring, not a representative jury, but an impartial jury." Further, the court observed that: "Under the Sixth Amendment, a defendant is entitled to object to a venire produced by a system that does not, *by design*, generate venire panels representative of a fair cross-section of the community. In this regard, Article I, section 10 of the TEXAS CONSTITUTION provides the same protection. Marquez v. State, 725 S.W.2d 217, 243 (Tex. Cr. App. 1987), cert. denied, 484 U.S. 872, 98 L. Ed. 2d 152, 108 S. Ct. 201 (1987). However, we cannot necessarily conclude that a disproportionate number of African-Americans on a single panel demonstrates a systematic exclusion of African-Americans in violation of Appellant's Sixth Amendment rights. May v. State, 738 S.W.2d 261, 269 (Tex. Cr. App. 1987), cert. denied, 484 U.S. 872 (1987). Proportionate representation of races on jury panels is not constitutionally required, although the selection of the panel must be done without discrimination as to race. May, 738 S.W.2d at 269." p. 288. (Emphasis supplied).

Comparing the evidentiary record in the *Pondexter, Lacy and May* cases to this case, I note that the trial courts in this trio of cases all had before them evidence of the manner and procedure for selection of the venire members. In *Pondexter*[19] the court of appeals observed "The record shows that venire members were chosen randomly, by computer through voter registration, driver's license and identification card registration lists." In *Lacy*[20], the court of appeals observed "The only evidence presented having any relevance to the manner in which the venire was composed was when the court stated that the panel had been randomly selected from the central jury pool." In *May*[21], the court of appeals observed "In fact, testimony reflects that the panel was selected from a computerized list of registered voters." In this case, however, the only evidence before the trial court sitting as fact finder in the habeas corpus proceeding was the affidavit of Mitchell's trial

---

[19]    At p.580.

[20]    At p.288.

[21]    At p.269.

counsel, whose affidavit[22] is hardly a model of precision.

By his memorandum in support of his application in this court,[23] Mitchell highlights in detail the deficiencies of his counsel's affidavit arguing that it cannot support the trial court's fact findings. On the issue of the racial composition of the venire, counsel averred in his affidavit as follows:

> "Turning first to the issue of the composition of the venire panel, no, I did not consider challenging the array, but I did so because of two reasons. One, because I believed that it was generally representative cross section of the wider community, and, two, because as I understand it, there have been certain safeguards built into the jury selection system here in Wichita County so as to guarantee that jury panels are chosen randomly. Specifically, as I understand it, jury panels are chosen from lists of registered voters, lists of people with driver's licenses, and lists of people with Texas ID cards. I spoke with Penny Baxley in the County Clerk's Office when I received the Court's Order and she told that the [protocol][24] in place back at the time of the trial (and, indeed, the system which is still in place today) has procedural safeguards which ensure a random selection process for the venire panel. I cannot recall the percentage of minorities on the panel-which I assume is what Mr. Mitchell is getting at-but even assuming that minorities were statistically under·represented on the panel, that under·representation would represent a statistical blip rather that a conscious effort on the part of the State to deny Mr. Mitchell his right to a jury of his peers."[25]

With respect to these averments, Mitchell argues:(1) " The fact is that trial counsel did not support a single one of his conclusory and naked assertions with a scintilla of data. His claims were clearly post hoc rationalizations for the fact that he failed to take seriously Petitioner's rights to be tried by a jury of his peers..." (2) "Here, all the State courts had to go off of were bare, unsupported assertions of unidentified "safeguards" allegedly used in the selection process.  Not a single method was identified; Not the one used in general, or the one used in Petitioner's case."  (3) "Moreover,

---

[22]     SHCR pp.861-866.

[23]     Docket No. 7.

[24]     Note: that the assumed word "protocol" inserted here was missing  from the original affidavit.

[25]      SHCR p. 862

just because trial counsel understood that the selections were made from Texas ID cards and voter registration cards and driver's license records, and that the selections from that information from those sources was compiled randomly. It is not difficult to use data from ...those sources in a manner that would result in an underrepresentation of African Americans...." (4) "Any reasonably competent attorney would take such numbers as one out of sixty, in a county of ten percent, as suspicious and worthy of challenge or further inquiry before he would write such a disparity off as resulting from a statistical *blip*."(5) "Trial counsel may have made a tactical decision not to investigate the gross underrepresentation, but the decision was not base on an adequate investigation and is, therefore, per se unreasonable under Strickland." (Emphasis supplied)

In response the State simply urges that the findings of the trial court in the habeas corpus proceeding is entitled to due deference by this Court and that the trial court's findings and decision are not unreasonable.

At the time of Mitchell's trial in 2007 (and currently), Article 33.09 of the Texas Code of Criminal Procedure mandated that jury panels, including special venires, for the trial of criminal cases be selected in the same manner as the selection of panels for the trial of civil cases. That process is set out in Chapter 62 of the Texas Government Code. Section 62.001 mandates the method for populating the jury wheel (*ie*. creation of the list from which a jury venire in a county in Texas may be drawn.) Section 62.001(a) designates the sources from names of persons may be listed: (1) from the current voter registration lists and (2) the current list of holders of valid drivers licenses and ID cards, but who are not otherwise disqualified.  Those disqualifications are defined statutorily in §62.102: (1) at least 18 years of age; (2) citizen of the state and county; (3) qualified to vote; (4) of sound mind and moral character; (5) able to read and write; (6) has not recently served on a petit jury ; (7) has not been convicted of theft or felony; and, (8) is not under indictment. Subsequent thirteen sections of Chapter 62 proscribe the manner of preparation and use of the jury

wheel, preservation of its security, manner of assuring random selection of venire members from the wheel, the manner of mixing the wheel, designation of the officials charged with the drawing of names from the wheel; the preparation of the jury lists from the names drawn; the alternative manner of using electronic or mechanical means to provide the random selection; designation of the officials charged with reviewing juror qualifications and excuses from service, and other matters.[26]

In his opinion[27] the trial court accurately summarized the three requisites for showing a *prima facia* a violation of the fair-cross-section requirements of the Sixth Amendment as articulated by the United States Supreme Court citing *Berghuis v. State*, 559 U.S. 314, 176 L. Ed.2249 (2010).[28] It is a fair inference that the trial judge presiding over Mitchell's habeas corpus proceeding was familiar with and could take judicial notice of the statutory protocol for inclusion of persons on the jury wheel and the protocol for the drawing of person's names from that wheel for placement on the venire lists for criminal trials in his county. The trial judge, indeed, had presided over the empaneling of that very jury venire of sixty persons and the selection and empaneling of the twelve from which it was drawn. In the context of that judicial knowledge and the judge's active involvement in the process, the affidavit statements of Mitchell's counsel take on substance since they confirm that Mitchell's trial counsel fairly believed that a challenge to the venire would be unavailing and that in the absence of any hint of variance from the norm, the mere statistical variance (characterized as a "blip") from the racial profile of the county was not enough to impute to counsel an obligation to directly challenge, or to investigate further, the racial composition of the

---

[26]     For a complete summary of the statutory provisions governing the jury selection process in the state of Texas, see 8-120 <u>Dorsaneo</u>, Texas Litigation Guide § 120.1 (2013)

[27]     SCHR p.884-894.

[28]     *Id*. at p.886.

venire of sixty or the panel of twelve. Therefor, the trial court's factual finding that "the venire is randomly selected 'from lists of registered voters, lists of people with driver's licenses, and lists of people with Texas ID cards'" is supported by the evidence before him.

And in the absence of any proof (or indeed, any allegation) of any specific irregularity in the implementation of the jury selection protocol in his own case or of any other irregularity in the racial composition of any other juries in other criminal cases in Wichita County, the trial court's finding that Mitchell had failed to show any "systematic exclusion" of African Americans from Wichita County juries was not an unreasonable finding or conclusion. More importantly, in the light of the assured failure of such a challenge, Mitchell's counsel cannot be faulted for having failed to make a fruitless challenge or of having failed to pursue a fruitless investigation. The trial court's determination that Mitchell's counsel "was not ineffective for not challenging the venire" is presumed to be, and is, correct.

Even before this court, Mitchell does not allege or point to any particular defect or difficulty with the jury selection protocol. In the absence of any allegation by Mitchell of any form or circumstance of irregularity in the jury selection process in his or any other case, the trial court was under no obligation to provide Mitchell with his requested evidentiary hearing to allow Mitchell to conduct a "fishing expedition." I conclude that the trial court allowed Mitchell a fair opportunity to develop his claim, but that he failed to do so.

Mitchell asks for an evidentiary hearing before this court on this issue. 28 U.S.C. 2254(2)(2). However, the Supreme Court case *Cullen v. Pinholster,* 131 S. Ct. 1388, 2011 U.S. LEXIS 2616, 179 L. Ed. 2d 557 (2011) made clear that federal habeas review under the deferential 28 U.S.C. § 2254(d)(1) standard applicable to claims adjudicated on the merits in state-court proceedings is limited to the record before the state court. Mitchell is not entitled to an evidentiary hearing on this issue before this court.

15

I find that the state trial court's decision denying Mitchell's claim for relief on this ground is not contrary to, nor is it an unreasonable interpretation of, clearly established federal law. Accordingly, I find that this claim is without merit and recommend that the District Court deny relief on this claim.  For the reasons stated, I recommend that the District Court deny this ground for relief.

Lesser-Included-Offense Issue

Mitchell complains of his counsel's failure to object to the jury instructions with respect to the phrasing of the "lesser-included-offense" instruction because it used the phrase "as included in the indictment." The state responds that since proof of the greater charged offense subsumes proof of the lesser offense, counsel was not required to make a frivolous objection.

The indictment in this case charged Mitchell with one offense under two different definitions of what constitutes murder: (1)intentionally or knowingly causing the death Da'Milla Walker; or (2) causing serious bodily injury to Da'Milla Walker by committing an act clearly dangerous to human life.  The indictment added an enhancement for conviction of a prior felony offense.

Here, this issue was not raised on direct appeal, but instead, it was raised by Mitchell in his state court application for habeas corpus.  Furthermore, the trial court to which the matter was referred was not addressing a complete failure to submit the instruction (or counsel's failure to object thereto), but instead, was addressing the language used in the lesser-included-offense instruction itself as it related to the verdict form.

The relevant language of the indictment[29] was as follows:

> "...defendant, on or about the 28th day of June, A.D. 2005, ...did then and there *intentionally or knowingly cause the death* of an individual, namely, Da'Milla Walker, by shooting the body of the said Da'Milla Walker."

---

[29]      SHCR p.2-7.

16

"...defendant, on or about the 28th day of June, A. D. 2005, ...did then and there *with intent to cause serious bodily injury* to an individual, namely, Da'Milla Walker, *commit an act clearly dangerous to human life that caused the death* of said Da'Milla Walker, by shooting the body of the said Da'Milla Walker."

The relevant Texas statutory definitions of murder and manslaughter at the time of Mitchell's indictment were contained in title 5, Chapter 19, Sections 19.02(b) and 19.04 of the Texas Penal Code that provide as follows:

§19.02 Murder.

(b) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes death of an individual; or

(3) commits or attempts to commit a felony.. and in the course of...the commission....commits...an act clearly dangerous to human life that causes the death..."

§19.04 Manslaughter

(a) A person commits an offense if he recklessly causes the death of an individual.

In the relevant portions of trial court's charge to the jury,[30] the trial judge addressed the offenses charged as follows:

<u>Paragraph 12</u>

" A person commits an offense if he:
(1) *intentionally or knowingly causes the death of an individual*;
(2) *intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes death* of an individual.

---

[30]    SHCR pp.156-164.

Paragraph 17

Now Bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about June 28, 2005, in Wichita County, Texas, the defendant LaCarlton Dewayne Mitchell did then and there, either acting alone or as a party to the offense as that term has been defined herein, *intentionally or knowingly cause the death of an individual*, namely, Da"Milla Walker, by shooting the body of the said Da'Milla Walker;

OR,

that on or about June 28, 2005, in Wichita County, Texas, the defendant LaCarlton Dewayne Mitchell did then and there, either acting alone or as a party to the offense as that term has been defined herein, *with intent to cause serious bodily injury to an individual*, namely, Da'Milla Walker, *commit an act clearly dangerous to human life that caused the death* of Ds'Milla Walker, by shooting the body of the said Da'Milla Walker.

Unless you find that defendant is guilty of murder beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of murder and next consider whether or not the defendant is guilty of manslaughter *as included in the indictment*. (Emphasis supplied).

Paragraph 18

Our law provides that a person commits manslaughter if he *recklessly causes the death of an individual*.

It is clear from the structure of the court's charge that the court defined the charges of murder and manslaughter in the exact statutory language. Furthermore, it is apparent that the court properly considered that the indictment properly charged the defendant with murder under the two alternative circumstances as defined by the statute. Then, the court included an instruction on the lesser-included-offense of manslaughter as defined statutorily. The phrases "*as included in the indictment*" used at the end of the paragraphs 17 and 19 of the jury charge were mere surplusage. The court gave the jury the opportunity to find the Mitchell guilty only of manslaughter, but the jury found him guilty of murder.[31]

In his decision on habeas corpus review, the trial court addressed this issue by stating that the phrase "as included in the indictment" was properly used in this context because proof of the charged offense (murder) subsumes the proof required to establish the lesser offense

---

[31]   Verdict, SHCR p.164, gave the jury two choices; the jury made the express finding of guilt of murder and did not sign on the verdict line to find Mitchell only guilty of manslaughter.

(manslaughter)" and had "nothing to do with whether the offense of manslaughter was specifically referenced in the indictment;" and, therefore, "counsel was not ineffective for failing to make a frivolous objection."[32]

To warrant the submission of a lesser-included-offense instruction in the appropriate case, it need not be alleged in the indictment on the greater charge. It is sufficient if the evidence as admitted warrants a conclusion that the greater offense is not established but may warrant a finding of guilt of the lesser offense. As the Texas Court of Appeals stated in *Mooring v. Quarterman, 2009 U.S.Dist. LEXIS 20636 (S.D.Tex. 2009):* "Texas law authorizes the inclusion of a lesser-included offense in the jury instructions where the following criteria are met: (1) the lesser offense must be included within the proof necessary to establish the offense charged; and (2) there must be some evidence in the record showing that if the defendant is guilty, he is guilty of only the lesser charge. See also *Hampton v. State*, 165 S.W.3d 691, 693-94 (Tex. Crim. App. 2005) (observing that this two-prong test applies regardless of whether the instruction is requested by the State or by the defendant)."

The federal standard for submission of the issue is similar. In *Reddix v. Thigpen*, 805 F.2d 506, 512 (5th Cir. 1986) the court stated: "The federal standard, which clearly satisfies due process, "is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater." In *Alexander v. McCotter*,[33] the Fifth Circuit addressed the issue of the complete failure the trial court to submit the lesser-included-offense instruction in a non-capital case by stating, "In a line of cases dating back to 1970, this Circuit has consistently held that the failure of the state trial judge to instruct a jury on a lesser included offense is not a federal constitutional matter. See *Easter v. Estelle*, 609 F.2d 756,

---

[32]    SHCR p.887.

[33]    775 F.2d 595 (5th Cir. 1985).

19

758 (5th Cir. 1980) (and cases cited therein); *Higgins v. Wainwright*, 424 F.2d 177, 178 (5th Cir.), *cert. denied*, 400 U.S. 905 (1970)." Then distinguishing a prior conflicting line of cases stated, "We are inclined to the view that the *Easter* line of cases which hold that a lesser included offense instruction is not a federal constitutional matter in non-capital cases survives the Bell decision...."[34] This *Alexander* holding continues in this circuit.[35] This line of cases addressed the trial court's failure to submit the issue where it had been raised by the evidence and requested by counsel for the defendant or by counsel for the state, rather than the failure of defendant's counsel to make such a request where raised by the evidence. As to the alleged deficiency of counsel in failing to request the submission of the "lesser included offense" instruction, recently in *Gonzales v. Dretke*, 2006 U.S. Dist. LEXIS 3736 (N.D. Tex. 2006, M. J. Stickney) adopted 2006 U. S. Dist. LEXIS 8309 (J. Sanders) the Court stated, "Petitioner argues his counsel was deficient for failing to request a jury instruction for a lesser included offense. It is well settled, however, that in non-capital cases, the failure to provide a jury instruction on a lesser included offense does not raise a federal constitutional issue"[36] However, in another recent case in this district,[37] the Fifth Circuit Court of Appeals affirmed the decision of the Honorable John McBride granting the Petitioner's application for writ of habeas corpus because he expressly found that trial counsel's performance was deficient under *Strickland* for, among other deficiencies, having failed to request the state trial court to submit a lesser included offense instruction to the jury. Therefore, it appears that such a failure on the part of trial counsel to request submission of the issue may rise to the level of a constitutional violation of the right to effective assistance of counsel, depending upon the

---

[34]   *Id*. at p.601.

[35]   *Creel v. Johnson*, 162 F. 3d 385, 390 (5th Cir. 1998); *Valles v. Lynaugh*, 835 F. 2d 126, 127 (5th Cir. 1988); *Jolley v. Thaler*, 2010 U. S. Dist. LEXIS 69596, p. 18 (N. D. Tex., 2010, MJ. Ramirez, Adopted 2010 U. S. Dist. LEXIS 69612).

[36]   At p. 11 of the opinion, citing *Creel v. Johnson, supra*.

[37]   *Richards v. Quarterman*, 566 F. 3d 553  (5th Cir. 2009).

facts and circumstances for each individual case. This is not such a case.

I conclude that the addition of surplus or unnecessary wording to a lesser-included-offense instruction does not rise to the level of a constitutional violation.  I find that the trial court's factual determination that counsel was not ineffective for having failed to make an unavailing challenge is not an unreasonable finding. I conclude that denying Mitchell's claim for relief on this ground is not contrary to, nor is it an unreasonable interpretation of, clearly established federal law. Accordingly, I find that this claim is without merit and recommend that the District Court deny relief on this claim.

<u>No Objection to Verdict</u>

Mitchell faults his counsel for not objecting to the charge on the ground that it only included a single line for the jury to find Mitchell guilty or not guilty of murder, rather than separate lines for two separate findings as to guilt or innocence; one for each alternative factual basis for a murder finding. Noting the structure of the definitional section of the court's charge (paragraphs 12 and 17), it is apparent that the court conditioned the single murder finding upon either of the two statutorily defined factual circumstances that define the Texas offense of murder.  Paragraph 17 makes it clear that a finding of guilt could be based on either of the two defined circumstances.   Whether Mitchell was "arraigned" on these elements as two separate offenses, or not, is irrelevant.  It is the charge that went to the jury that determines whether the facts determined by the jury under either alternative support a finding of guilty of murder.  Under the statutory definition this form for submission of the two alternatives is the only proper format, otherwise a dual submission would be subject to an objection that it is duplicitous. The trial court's finding and conclusion is neither unreasoned nor unreasonable. Accordingly, I find that this claim is without merit and recommend that the District Court deny relief on this claim.

Lack of Attention of Juror Batista

Mitchell faults his counsel for failing to have challenged juror Batista for cause or failing to use a peremptory challenge to strike from the jury since she "could not pay attention to the facts and evidence during the trial."[38]  The *voir dire* examination of juror Batista[39] does not disclose any ground for challenge for cause.  Nor does the record otherwise reflect "lack of attention" by juror Batista.  With respect to the record of the *voir dire* questioning of juror Batista, Mitchell's counsel acknowledged that he had not review the questioning prior to submitting his affidavit. But counsel's affidavit gives a plausible reason for counsel's unwillingness to use one of the defendant's peremptory challenges to strike juror Batista.  Mitchell points to no other evidence to the contrary.  Rather, Mitchell attempts to use his counsel's less-than-precise affidavit to bootstrap his argument into a plausible claim.   As observed by the state: "The state habeas trial court noted that this juror expressed a concern for her therapy patients but nothing that would warrant a challenge for cause."  As to a peremptory challenge, the state habeas court found credible Mitchell's counsel's affidavit outlining that the use of peremptory strikes was done in concert with Mitchell and that counsel used all strikes, indicating that either Mitchell or counsel felt other venire members should be struck.[40]

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 176 L. Ed. 2d 678, 686 (2010) (internal quotation marks omitted). The state court's credibility choice is binding as are the resultant factual findings. 28 U.S.C. § 2254(e)(1); *Valdez v. Cockrell*, *supra*. at 948 n.11. The state courts' rejection of this

---

[38]     Application, Docket No. 2, p. 9.

[39]     RR, p. 98 (line 5) to p. 100(line 10).

[40]     *Id*. at pp. 889-90.

claim was not objectively unreasonable.  Accordingly, I find that this claim is without merit and recommend that the District Court deny relief on this claim.

<u>Jury Argument-Shift of Burden of Proof-Alibi Witness</u>

Mitchell faults his counsel for failing to object to the following comments made early in the prosecutor's final closing argument:[41]

> Prosecutor:     "Your know, defense counsel said, hey, where are all these other people that were there?  And you know what, he has a right to subpoena them just like we do.  He could have had a little piece of paper, had a constable or a deputy go out and serve them and they could have been here to testify, but I suspect he wouldn't want to do that, because that would just be more individuals that would talk about his---"

> Defense Counsel:     "Judge, I'm going to object to that.  That's introducing facts which aren't in evidence and also, it's not my burden of proof to prove the case."

> Court:     "Sustained."

> Prosecutor:     "You didn't hear anything that contradicted these girls.  You didn't hear anyone come in and say, hey, I was with Halfdead.[42] We were working, we were in an amusement park, we were doing this or that.  You didn't hear anything like that."

In Ground Six of Mitchell's application before the state habeas court he asserted that the prosecutor's comments were objectionable because they were  a direct call to the jury to disregard the court's instructions on the burden of proof, and to shift the burden of proof to the defendant. This, argues Mitchell, should have caused Mitchell's counsel to object to the statement, call for its being stricken, have the jury instructed to disregard it.[43]  Later, in Ground Eight of his state application, Mitchell referenced these same comments with respect to his claim that his counsel

---

[41]     RR, Vol. 4, pp.193-94

[42]     "Halfdead" was shown to be Mitchell's alias within the neighborhood.

[43]     SHCR p 12, Application p.10.

should have called his girlfriend as an alibi witness, implying that the comments were objectionable as comments on the failure of the defense to call any witnesses, including the defendant himself. These are the same claims and arguments advanced in his application in this court.[44]

In addressing this argument, the state habeas court rejected this claim ruling that there is no basis for the Mitchell's claim since "the State may comment on a defendant's failure to produce witnesses 'so long as the remark does not fault the defendant for exercising his right not to testify.'"[45]

The first comment of the prosecutor cited above was made in direct rebuttal of Mitchell's counsel's own statement in his closing argument that stressed the prosecution's failure to meet its burden of proof.  Counsel Allensworth posited that "This case is going to rise or fall on the testimony of the three girls we heard earlier in these proceedings: Ms. McGee, Ms. Combs, Ms. Walker."[46]  He then proceeded to challenge each them on their court testimony by showing inconsistencies among them and within their own statements and testimony.[47] He then later followed with the comment, "By the way, why is it of the 10 people that were there, only three seemed to come forward to the police?  What happened to the other set and why aren't they here in this courtroom?"[48]

It therefore appears that prosecutor's initial comment was invited by Mitchell's counsel's own prior argument about the absence of, and implied failure to call, other of the ten witnesses to the shooting event.  That is, witnesses other than the three witnesses whose testimony Mitchell's

---

[44]     Docket No. 2, p. 7 and Docket No. 7, Memorandum, pp.12-14.

[45]     SHCR p.890 citing *Jackson v. State*, 17 S. W. 3d 664, 674 (Tex. Crim. App. 2000.)

[46]     *RR* Vol.5, at 176 (lines 16-19).

[47]     *Id*. at 183-84.

[48]     *Id*. at 182.

counsel found so inconsistent as to be not worthy of belief.[49]   The Texas courts have ruled that a response to the argument of opposing counsel or invited argument is an appropriate category of argument. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex. Crim. App. 1987) citing  *Modden v. State*, 721 S.W.2d 859, 861 (Tex .Cr.App. 1986); *Anderson v. State*, 717 S.W.2d 622, 632 (Tex. Cr. App. 1986); *Dorsey v. State*, 709 S.W.2d 207, 209, 210 (Tex.Cr.App. 1986).

Furthermore, as observed by the state court in its decision,  the state may comment on the defendant's failure to call material and competent witnesses whose existence is reflected in the record and who could support or buttress a defensive theory. The state may even argue that the reason no witnesses were called is because the testimony would have been unfavorable.  *Albiar v. State*, *supra*. at 362-363 (Tex. Crim. App. 1987); *Brown v. State*, 639 S.W.2d 505, 508 (Tex. App., Fort Worth 1982, pet. ref.)

While there is a statutory and constitutional prohibition against the making of a comment on a defendant's exercise of his or her right to silence,[50] under Fifth Amendment of Federal Constitution;[51] under Texas Constitution Article 1 § 10.[52]  An objection to a reference to the defendant's failure to testify must specifically allege this as its basis.  Although this only serves to call further attention to that fact, it is nevertheless required. See *Sloan v. State*, 515 S.W.2d 913, 915-916 (Tex. Crim. App. 1974).  Mitchell's counsel made no such objection.  Instead, his objection referenced only the shifting of the burden of proof.

---

[49]     Note his comments on the three witnesses' credibility, *Id*. at 181.

[50]     *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106.

[51]     *Stafford v. State*, 578 S.W.2d 394, 395 (Tex. Crim. App. 1978).

[52]     See also Texas Code of Criminal Procedure. Art. 38.08.

Whether defense counsel can be faulted having failed to make the objection on the "right to silence ground," an argument is an improper comment on the defendant's right to silence <u>only if</u> the language employed is manifestly intended to be, or is of such a character that the jury would naturally and necessarily take it to be, a comment on the failure to testify. *Cook v. State*, 702 S.W.2d 597, 599 (Tex. Crim. App. 1984). The language must be assessed from the standpoint of the jury. To be taken as an improper comment, the language used must create the necessary implication that it refers to the defendant's failure to testify. *Bird v. State*, 527 S.W.2d 891, 894 (Tex. Crim. App. 1975)( facts of each case analyzed to make determination). It is not sufficient basis for reversal that the language used might be construed as an implied or indirect allusion to that failure. *Griffin v. State*, 554 S.W. 2d 688, 689-690 (Tex. Crim. App. 1977). When the prosecutor's comment is sufficiently ambiguous to yield two plausible inferences, it is not a comment that may "necessarily" be viewed by the jury as a reference to the defendant's failure to testify. *Pedford v. State*, 720 S.W.2d 267, 270 (Tex. App., Austin 1986, pet. ref.) (such as comment that "we don't know" what defendant planned to do with victim). However, in making this determination, the comment should be judged first by its clear meaning. The context of the argument is only considered when the comment is clearly an indirect one. See *Mason v. State*, 668 S.W. 2d 726-727 (Tex. App., Houston [14th Dist.] 1983, pet. ref.).

Even for an indirect comment on the failure to testify to be considered harmful, it must call for a denial of an assertion of fact or for contradicting evidence that only the defendant is in a position to offer. *Henson v. State*, 683 S.W.2d 702, 704-705 (Tex. Crim. App. 1984) . For example, if only the complainant and the defendant were present at the commission of the crime, it is improper to argue that the defense failed to challenge the credibility of the complainant. *Dubose v. State*, 531 S.W.2d 330, 331 (Tex. Crim. App. 1975) ; see *Cockerham v. State*, 703 S.W.2d 334, 335 (Tex. App., Corpus Christi 1985) , pet. dis. 729 S.W.2d 742 (Tex. Crim. App. 1987); but see

*Pedford v. State*, *supra.* (prosecutor must directly or implicitly "call on" defendant to explain absence of evidence). The possible existence and availability of other sources of evidence besides the defendant must be affirmatively reflected in the evidence for the comment not to be considered one on the defendant's failure to testify. *Rodriguez v. State*, 787 S.W.2d 504, 506 (Tex. App., El Paso 1990); see *Anderson v. State*, 813 S.W.2d 177, 181 (Tex. App., Dallas 1991).   Here, Mitchell's allegation that he was asserting an alibi to imply that he was not present in the vehicle from which the shots were fired killing Da'Milla Walker.  In order to establish an alibi or presence at another place and time does not depend solely upon the defendant's own testimony but often can be established through other persons as witnesses, such as Mitchell's girlfriend.  As reflected by his affidavit, Mitchell's counsel was aware of Mitchell's girlfriend's availability to testify as to any alibi Mitchell might assert.

Here, I find that the clear, unambiguous, necessary purpose and meaning of the prosecutor's comments, both before and after the objection and the court's ruling thereon, was to rebut the inference from defense counsel's prior argument that rested upon the absence of testimony from the seven other witnesses at the scene.  Even if the prosecutor's argument was an implied or veiled allusion to the defendant's failure to put forth a witness that would support a claim of alibi, I find that the prosecutor's comment would not have been objectionable by Mitchell's counsel.  I conclude that Mitchell's counsel cannot be faulted for not having made an objection that was unsustainable.  I find that the state trial court's ruling was not unreasonable, indeed, was correct.  I conclude that the state court's ruling certainly was not and did not involve an unreasonable application of clearly established federal law.  Accordingly, I find that this claim is without merit and recommend that the District Court deny relief on this claim.

27

Improper Jury Argument-Gang Affiliation

Out of the ten pages of his closing argument,[53] the prosecutor made the following comment as he closed and rested:

> "Ladies and gentlemen, unfortunately, violence like occurred that day on 710 Welch is part of our world, part of our society and part of this town and it's part of your duty as jurors to convict the guilty    to  protect this town from people like this defendant that are willing to gun down a 15 year-old girl in the yard of some of her relatives.  They didn't care who they hit, who they killed.  They wanted to send a message.  Don't mess with us.  Don't talk bad to our sisters.  Don't oppose us."[54]

This first sentence was a clear general call for law enforcement.  The sentences that follow were fair comments on what the evidence during the trial reflected rather than a call to convict someone on the basis of extraneous conduct or affiliation. The trial court found that "the argument constituted a proper plea for law enforcement" and not for a conviction based on extraneous conduct."[55]

A plea for law enforcement is one of the four areas for proper jury argument in Texas. *Guidry v. State*, 9 S.W. 3d 133 (Tex. Crim. App. 1999); *Darden v. State*, 629 S.W. 2d 46, 52 (Tex. Crim. App. 1982)(four proper areas of jury argument are summation of evidence, reasonable inference from evidence, answers to opposing counsel's argument, and *pleas for law enforcement*.) A plea that the jury sends a message to the community falls within the well-settled parameters of a plea for law enforcement. *Goocher v. State*, 633 S.W.2d 860, 864 (Tex. Crim. App. 1982). It is also permitted under federal standards. See*, Bradley v. Thaler*, 2012 U.S. Dist. LEXIS 30483, p. 16 (N.C. Tex. 2012, MJ Cureton, adopted, 2012 U.S.Dist. LEXIS 30418 (N.D. Tex. 2012).  Furthermore, improper jury argument by the state does not present a claim of constitutional magnitude  in a federal habeas action unless it is so prejudicial that the state court trial was rendered fundamentally

---

[53]      RR Vol. 5, pp. 186-96.

[54]      *Id.* p.195.

[55]      SHCR pp. 891-92.

28

unfair. *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). To establish that a prosecutor's remarks are so inflammatory, the petitioner must demonstrate that the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper remarks. The prosecutor's remarks must infect the trial with such unfairness as to make the resulting conviction a denial of due process. *Bell v. Lynaugh*, 828 F.2d 1085, 1095 (5th Cir. 1987). A prosecutor's argument, by itself, is a constitutional violation in only the most egregious cases. *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987).   Here the prosecutor's argument was for the jury to do their duty to find this guilty defendant guilty.

Only one other place in his argument did the prosecutor make a direct reference to a "gang." In referring to Mitchell's potential motive for the shooting, the prosecutor stated: "He had all the motive in the world. There had been ongoing gang problems for this whole month– I'm sorry, this whole summer."[56] This casual use of the word "gang" by the prosecutor could not reasonably have biased a jury already inoculated during the vigorous *voir dire* examination against holding their individual bias against gang violence against this defendant.  More to the point, the comment was intended to relate more to the prosecutor's establishment of a motive for the fusillade in which Mitchell participated that resulted in the death of the teen.

This whole trial arose out of a drive-by shooting of a 15 year old girl in the front lawn of one of her relatives, the stream of automatic assault rifle and pistol shots coming from two cars of participants, including the defendant Mitchell with his gold teeth showing.   The cars slowed after rounding the nearby corner, lingered at the scene where 40-plus shots were fired from as many as three firearms, while three girls cowered under a curb-side car and the victim lay dying on the lawn. To establish a motive for the shooting, the prosecutor introduced evidence of a prior verbal affront

---

[56]     RR p. 190.

to the girlfriends of the shooters (members of a rival gang) by the residents of the adjacent house at 710 Welch.  The defendant's affiliation with a known violent gang was relevant to the establishment of a motive for the shooting.  As found by the state habeas court, the gang reference put the shooting in "its proper context."  The prosecutor's comment was a reasonable inference from the admitted testimony.

Based upon a review of the trial testimony and the arguments of counsel, I find that the "gang" reference by the prosecutor in his closing argument was incidental at most. The evidence of Mitchell's guilt was not so insubstantial that the conviction would not have occurred but for the reference. I further find that the trial court's findings were reasonable.  Finally, I conclude that the complained-of jury argument was neither persistent or pronounced nor was it so egregious as to undermine confidence in the outcome of Mitchell's trial. Accordingly, I find that this claim is without merit and recommend that the District Court deny relief on this claim.

<u>Recommendation</u>

Upon review of the papers, pleadings and records in this case, I find that Petitioner has failed to establish that the state court's adjudication of his ineffective assistance of counsel claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  *See* 28 U.S.C.A. § 2254(d) (West 2010).  Petitioner has further failed to demonstrate that the state court's decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). As noted above, the trial court's determination is entitled to "great deference," *Batson*, at 98., and "must be sustained unless it is clearly erroneous," *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be

given the benefit of the doubt. *Renico v. Lett*, 559 U.S. 766 (2010) (internal quotation marks omitted). Accordingly, I recommend that petitioner Mitchell's petition for writ of habeas corpus be in all things denied.

<u>Standard Instruction to Litigants</u>

A copy of this report containing findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings, conclusions and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

It is so ORDERED, this 25th day of February, 2014.

Robert K. Roach
UNITED STATES MAGISTRATE JUDGE